U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 FEB 22 AM 10: 09

CLERK
BY_____PC_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WALLACE S. NOLEN, )
)
Plaintiff, )
)
v. ) Case No. 5:11-cv-114
)
UNITED STATES POSTAL SERVICE, )
PATRICK TIBBETTS, NICK DOE, )
JOHN DOE, TIMOTHY )
BOMBARDIER, JOHN DOE 1-10, )
JOHN DOE 11-20, JANE DOE, )
JOHN DOE 21, JANE ROE, AND )
JOHN ROE, )
)
Defendants. )

**ORDER GRANTING UNITED STATES POSTAL SERVICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING CITY OF BARRE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING PLAINTIFF'S MOTION FOR EXTENSION OF THE STAY, MOTION TO COMPEL AN ANSWER, AND MOTION FOR PARTIAL SUMMARY JUDGMENT**
(Docs. 30, 39, 42)

This matter comes before the court on a motion to dismiss, or alternatively for summary judgment, filed by Defendants United States Postal Service, Defendant Patrick Tibbetts, and other unnamed USPS employees (collectively "USPS Defendants"); a motion for judgment on the pleadings filed by Defendants City of Barre, Timothy Bombardier, and other unnamed Barre Police Department employees (collectively "City of Barre Defendants"); and a motion for extension of stay, motion to compel an answer, and motion for partial summary judgment with respect to the question of temporary injunctive relief filed by Plaintiff Wallace Nolen.

As set forth below, the stay in this case – issued previously because of Mr. Nolen's poor health – has been lifted, and all Defendants have answered or moved to

dismiss the Verified Complaint. Accordingly, Mr. Nolen's motions to extend the stay and compel an answer are hereby DENIED as moot. Remaining before the court are Defendants' dispositive motions, and Mr. Nolen's motion for partial summary judgment. The USPS Defendants are represented by Assistant United States Attorney Nikolas P. Kerest. The City of Barre Defendants are represented by Oliver L. Twombly, Esq. Mr. Nolen is representing himself.

I. **Mr. Nolen's Factual Allegations.**

The Verified Complaint alleges that in December 2005, Mr. Nolen and his wife were renting an apartment in a multi-family dwelling in Barre, Vermont. While living in the apartment, the Nolens allegedly experienced problems with their mail delivery. Specifically, their mail was mis-delivered, intermingled with mail for other tenants, or delivered by an "improper method violating postal regulations." (Doc. 4 at 3.) The Nolens complained to USPS personnel, including the "officers-in-charge" at the Barre Post Office, but no corrective action was taken. *Id.* at 3. They subsequently switched delivery of their mail to post office boxes, first in Barre and then in Montpelier, but the problems allegedly continued.

On or about January 17, 2006, Mr. Nolen and his wife purchased a single-family home at 22 Gallow Avenue in Barre. In February 2006, Mr. Nolen allegedly witnessed a postal delivery truck drive onto his lawn, knocking down trees and shrubs and creating ruts in the lawn. He complained to USPS supervisory personnel, and was told that the USPS would no longer deliver to his home for safety reasons. The safety issue was reportedly related to the fact that Mr. Nolen's home was at the end of a dead-end street, and a U-turn was required for delivery.

Mr. Nolen also asked that delivery to his home be made to a box attached to the house, rather than at the street. He informed the USPS that both he and his wife were disabled, and requested such delivery as a reasonable accommodation under the Americans with Disabilities Act ("ADA"). The USPS agreed to come to the Nolens' home, but allegedly agreed to deliver to a mailbox across the street. Mr. Nolen installed such a box "under protest," and continues to "demand" delivery to his house. *Id.* at 5.

In or about March 2006, Mr. Nolen witnessed someone "rum[m]aging" through his mail in the box across the street. *Id.* Consequently, and after "repeatedly complaining about these acts/omissions," he temporarily requested delivery to a post office box at the Barre Post Office. Mr. Nolen claims that mail sent to his post office box was often delayed or returned, and that once the temporary change of address expired, delivery did not resume at his home mailbox as allegedly required by federal postal regulations.

In the summer of 2009, Mr. Nolen's wife moved out of the Gallow Avenue home. During that same time period, mail that required a signature for receipt was not being delivered to Mr. Nolen's home, thus requiring him to travel to the post office "to retrieve his packages, certified mail, registered mail, etc. items." (Doc. 4 at 7.) Mr. Nolen also claims that "unlike all other customers, [he] was unable to purchase stamps or other services unless he traveled to [] the postal services facilities." *Id.*

Shortly after Mr. Nolen's wife left the Gallow Avenue residence, Mr. Nolen went to the Barre Post Office in search of an important letter. It is not clear from the Verified Complaint whether the letter was recovered, but Mr. Nolen subsequently tried to file a complaint with Barre Post Office supervisory personnel. Upon his return home, two Barre police officers hand-delivered a notice against trespass allegedly barring Mr. Nolen from returning to the Barre Post Office.[1] According to the Verified Complaint, "the sole 'complaint' made by post officials was that the Plaintiff was 'threatening to sue' postal

---

[1] Under Vermont law, a notice against trespass is a necessary predicate for a charge of unlawful trespass. *See* 13 V.S.A. § 3705(a). Pursuant to Section 3705(a):

> (a) A person shall be imprisoned for not more than three months or fined not more than $500.00, or both, if, without legal authority or the consent of the person in lawful possession, he enters or remains on any land or in any place as to which notice against trespass is given by:
>> (1) Actual communication by the person in lawful possession or his agent or by a law enforcement officer acting on behalf of such person or his agent; or
>> (2) Signs or placards so designed and situated as to give reasonable notice.

officials!" *Id.* Mr. Nolen claims that the notice against trespass violated, and continues to violate, his First Amendment right to free speech and right of assembly.

At an unspecified point in time, Mr. Nolen and his wife opened a post office box at the South Barre Post Office. The officer in charge of the post office allegedly told the Nolens that they could not park in the handicapped parking area. When the Nolens displayed a permit for handicapped parking, the officer allegedly stated that Mr. Nolen's wife did not appear to be disabled. A few weeks after this "'confrontation,'" the designated parking spot was moved to the opposite end of the building, "thereby forcing [the Nolens] as well as all other similarly situated disabled people . . . to walk the width of at least four cars more than previously required." *Id.* at 8. Mr. Nolen complained to USPS supervisory personnel, "the Post Master General, General Counsel and even [his] Congressional Representatives but no action has been taken to move this space back to where it [] was." *Id.*

Mr. Nolen's next claim pertains to money orders. He states that he is a frequent user of money orders "to pay for goods, services, and/or other indebtedness," but that "many" of his money orders never reach their destination. Mr. Nolen alleges that because the USPS does not record the name of either the purchaser or the payee on the money order, there is no way for the purchaser, "absent having their receipts," to "file a claim for such money order." *Id.* He further alleges that postal service regulations prohibit the filing of claims for the proceeds of money orders "for a set period of time." *Id.* These policies, he argues, constitute an unlawful taking of personal property.

The Verified Complaint seeks purely equitable relief. Specifically, Mr. Nolen seeks preliminary and permanent injunctions barring Defendants from violating his First Amendment rights to free speech; his alleged right to receive mail at a box attached to his home; his alleged right to enter the Barre Post Office; and his alleged right to have "accountable mail." *Id.* at 10. He also seeks an order barring Defendants from "any further acts or omissions contrary to law and/or in retaliation for my actual exercise or attempted exercise of my constitutional rights." *Id.* Finally, Mr. Nolen requests an injunction requiring modification of USPS procedures with respect to money orders.

4

## II.  Procedural History.

Mr. Nolen filed his Verified Complaint on May 11, 2011. On September, 14, 2011, he moved the court to stay all proceedings, citing poor health. The court granted the motion, and ordered the case stayed through December 15, 2011. On December 20, 2011, Mr. Nolen moved to continue the stay, and the court again granted his motion, extending the stay through April 15, 2012. The court further ordered that if Mr. Nolen wished to extend the stay beyond that time, he must submit medical documentation to support his request.

On March 1, 2012, the court received a letter from a health care provider regarding Mr. Nolen's present condition. On May 2, 2012, Mr. Nolen again moved for an extension of the stay. On May 17, 2012, the court held a status conference, with Mr. Nolen attending by phone. The court granted the motion to stay, and ordered the parties to attend a settlement conference with Magistrate Judge John M. Conroy. The conference did not result in a settlement, and on July 5, 2012, the court lifted the stay and allowed the parties to proceed on pending motions. The court also ordered Defendants to file responses to the Verified Complaint and Mr. Nolen's pending motions within thirty days.

On August 6, 2012, the USPS Defendants filed their motion to dismiss, or in the alternative for summary judgment. When Mr. Nolen did not respond, the court issued an order informing him that motions for an extension must be filed with the court, and allowing him through November 20, 2012 to respond to the USPS Defendants' motion. That deadline has now passed, and the court has received no response to the motion. On October 17, 2012, the City of Barre Defendants moved for judgment on the pleadings. Mr. Nolen has failed to respond to that motion as well.

## III.  USPS Defendants' Motion to Dismiss or for Summary Judgment.

### A.  Construing the Motion.

The USPS Defendants have moved to dismiss, or in the alternative for summary judgment, on all claims against them. Their arguments include: that they are protected by sovereign immunity; that the court has no jurisdiction to review claims based either upon

5

the application of postal regulations or dissatisfaction with mail delivery; that claims regarding access to the Barre Post Office and mail delivery to 22 Gallow Avenue are moot; that Mr. Nolen has failed to exhaust his administrative remedies as required under the Federal Tort Claims Act ("FTCA"); and that Mr. Nolen has failed to state an ADA claim.

Many of the facts in support of the USPS Defendants' motion go beyond the four corners of Mr. Nolen's Verified Complaint and related attachments. The court acknowledges that when presented with certain grounds for dismissal, including arguments relating to subject matter jurisdiction, evidence outside the pleadings may at times be considered without converting a motion to dismiss into a motion for summary judgment. *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (court may consider matters outside the pleadings when considering a Rule 12(b)(1) motion). Nonetheless, because several of the USPS Defendants' arguments rely upon such evidence, and the legal bases for those arguments are varied, the court will construe the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d) (If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"); *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006) ("A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment"); *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment.") (internal quotations marks and citations omitted).

Before the court considers a motion to dismiss as one for summary judgment, it must ensure that the non-moving party has received "sufficient notice" of the possibility of conversion, *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995), as well as a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Ordinarily, formal notice is not required where a party should

6

reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (internal quotation marks, brackets, and citation omitted).

Here, the USPS Defendants clearly moved in the alternative for summary judgment. They also submitted a statement of undisputed material facts as required for a summary judgment filing under this court's Local Rules, *see* L.R. 56(a), and a notice of summary judgment filing as required when the non-movant is self-represented, *see* L.R. 56(e). Furthermore, in granting Mr. Nolen's motion for leave to proceed *in forma pauperis*, the court notified him "of the nature and consequences of a summary judgment motion." *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 621 (2d Cir. 1999). Given the nature of USPS Defendants' filings, their specific notice of a summary judgment filing, and the court-provided information regarding summary judgment, the court finds that no additional notice to Mr. Nolen is required.

### B. Standard of Review.

Summary judgment is appropriate where no genuine issue of fact exists to present to the trier of fact. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). To defeat a properly supported motion for summary judgment, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal quotation marks and citation omitted).

Here, the USPS Defendants' motion is unopposed. The Second Circuit has held that where a non-moving party fails to oppose a motion for summary judgment, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment

7

motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" *Id.* (internal quotation marks omitted).[2]

### C. Mootness.

The USPS Defendants submit that any claims regarding Mr. Nolen's lack of access to the Barre Post Office and lack of delivery to his home are moot. It is undisputed that a notice against trespass, dated June 30, 2009, effectively barred Mr. Nolen from entering the Barre Post Office. In support of their current motion, the USPS Defendants have provided the court with a letter to Mr. Nolen dated July 19, 2012, in which Peter Giunta, Postmaster at the Barre Post Office, informs him that "the Postal Service has asked the Barre, VT Police Department in writing to withdraw the 'No Trespassing' order issued against you.'" (Doc. 39-11 at 1.) The letter further informed Mr. Nolen that the USPS would resume delivery to one of two curbside delivery locations, giving him the choice of a box either across the street from his home, or on the same side of the street but close to the box of a neighboring house.

"Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'" *Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). A case becomes moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *Blackwelder*, 866 F.2d at 551 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)); *see also Jefferson v. Abrams*, 747 F.2d 94, 96 (2d Cir. 1984). When this occurs, the case or controversy requirement is not satisfied, and a federal court lacks subject matter jurisdiction over the action. *Blackwelder*, 866 F.2d at 550; *Jefferson*, 747 F.2d at 96; *see also Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). "No matter how vehemently the parties

---

[2] At the summary judgment stage, the court may treat Mr. Nolen's Verified Complaint as an affidavit. *See Patterson v. County of Oneida NY*, 375 F.3d 206, 219 (2d Cir. 2004). As with any affidavit, in order to create a disputed issue of fact, statements in the Verified Complaint must be properly supported and not merely conclusory. *See* Fed. R. Civ. P. 56(e)(2).

8

continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

As noted above, Mr. Nolen is seeking purely injunctive relief. With respect to his ability to access the Barre Post Office, he claims that the notice against trespass violated his First Amendment rights of assembly and free speech. As he may now enter the Barre Post Office without violating the notice, those claims are now moot. Similarly, any claim that the USPS is refusing to deliver his mail to Gallow Avenue is also moot.[3] Summary judgment is therefore GRANTED in favor of the USPS Defendants with respect to Mr. Nolen's mail delivery and post office access claims, and those claims are DISMISSED.

### D. Money Order Claims.

The USPS Defendants argue that the court has no power to review Mr. Nolen's claims regarding the processing of money orders. Mr. Nolen alleges that the USPS does not keep adequate records of its money orders, that as a result money orders are being lost, and that this constitutes an unlawful taking by the government. The USPS Defendants argue that money orders are governed by postal regulations, and that federal law provides no private right of action to challenge those regulations.

The court's analysis begins with the Postal Reorganization Act ("PRA"). Under the PRA, the USPS is "an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. "Holding a monopoly over carriage of letters, the Postal Service has significant governmental powers. . . . Consistent with this status, the Postal Service enjoys federal sovereign immunity absent a waiver." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 483-84 (2006) (internal citation and quotation marks omitted); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit").

---

[3] This ruling does not pertain to Mr. Nolen's claim that, because of a disability, he is entitled to have delivery to a box attached to his home. That issue is discussed separately below.

9

Notwithstanding the USPS's sovereign immunity, the PRA has granted it the power "to sue and be sued in its official name." 39 U.S.C. § 401(1). The PRA also provides that the Federal Tort Claims Act ("FTCA") "shall apply to tort claims arising out of activities of the [USPS]." 39 U.S.C. § 409(c); *see also Dolan*, 546 U.S. at 484. In *Meyer*, the Supreme Court held that when determining an entity's amenability to suit, "[t]he first inquiry is whether there has been a waiver of sovereign immunity. If there has been such a waiver . . . the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief." *Meyer*, 510 U.S. at 484. Given that the PRA waives sovereign immunity by allowing both suit "in its official name" and suit against USPS employees under the FTCA, the court must determine whether Mr. Nolen's claims have an "avenue for relief" under any "substantive law." *Id.*

The PRA specifically excludes some forms of federal law, including the Administrative Procedures Act ("APA"), from applying to the USPS. *See* 39 U.S.C. § 410(a). "Thus, the [USPS] is exempt from the APA's general mandate of judicial review of agency actions." *Currier v. Potter*, 379 F.3d 716, 725 (9th Cir. 2004). The Ninth Circuit has concluded that, "[g]iven this statutory backdrop," as well as the intent of Congress to render the USPS's liability substantially the same as that of a private business, "we are satisfied that the PRA evinces Congress's general intent to withdraw judicial scrutiny of postal regulations." *Id.* The holding in *Currier* has been cited with approval in this Circuit. *See Sokolich v. U.S. Postal Serv.*, 2006 WL 1650809, at *3 (N.D.N.Y. June 15, 2006) ("This Court agrees with the Ninth Circuit's conclusion and finds that there is no subject matter jurisdiction to review the USPS's determination under the APA.").

Although Mr. Nolen characterizes his claim as constitutional, he is clearly challenging the adequacy of current USPS regulations with respect to money orders. For relief, he asks the court to order "corrective measures" in form of changes to those regulations. (Doc. 4 at 9.) Because Mr. Nolen is directly challenging postal regulations, the court finds that it has no jurisdiction to adjudicate his claim. *See Currier*, 379 F.3d at

10

725; *see also In re U.S. Postal Serv. Privacy Act Litigation*, 2009 WL 2710261, at *5 (W.D. Wash. Aug. 25, 2009) (concluding that plaintiff's unjust enrichment claim was "a direct challenge to" a USPS regulation, and holding that the court lacked jurisdiction to adjudicate the claim). The USPS Defendants' motion for summary judgment with respect to Mr. Nolen's money orders claim is therefore GRANTED.[4]

### E. Postal Delivery Claims.

Mr. Nolen also claims that the USPS Defendants have violated his right to receive "mail properly addressed to me or residents/employees/former employees/businesses[,]" and that slips left in his mailbox have denied him access to "accountable mail." (Doc. 4 at 9-10.) As discussed above, tortious activities by the USPS, including negligence, are encompassed by the FTCA's limited waiver of sovereign immunity. *See* 39 U.S.C. § 409(c). However, under 28 U.S.C. § 2680(b), sovereign immunity is not waived as to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." Under this "postal matter exception," the USPS retains sovereign immunity "for injuries arising, directly or consequentially, because mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address." *Dolan*, 546 U.S. at 489. The court therefore lacks jurisdiction over Mr. Nolen's claims with respect to the delivery of his mail. *See id.*; *see also United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit.").

Even if the "postal matter exception" did not explicitly bar these claims, the court would lack subject matter jurisdiction because Mr. Nolen has not shown compliance with the FTCA's exhaustion requirement. *See* 28 U.S.C. § 2401(b); *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). The FTCA requires a plaintiff to exhaust his administrative remedies prior to commencing a lawsuit. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars

---

[4] Furthermore, the USPS has a process for making claims with respect to money orders. According to the Domestic Mail Manual, a purchaser of a money order may inquire about payment of the money order by filing a form and paying the appropriate fee. (Doc. 39-17 at 4.) The USPS submits that Mr. Nolen has not exhausted this procedure.

11

claimants from bringing suit in federal court until they have exhausted their administrative remedies."). The FTCA's exhaustion requirement is jurisdictional, *see Celestine*, 403 F.3d at 82, and "[t]he burden is on the plaintiff to both plead and prove compliance with the statutory requirements" of the FTCA. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987); *see also Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999). Because Mr. Nolen has not satisfied his burden of showing exhaustion under the FTCA, the USPS Defendants would be entitled to summary judgment on this claim.

Finally, 39 U.S.C. § 3662 provides: "Any interested person . . . who believes the Postal Service is not operating in conformance with the requirements of the provisions of [the PRA] may lodge a complaint with the Postal Regulatory Commission in such form and manner as the Commission may prescribe." 39 U.S.C. § 3662(a). Courts have held that, pursuant to this statute, complaints regarding postal delivery service must be addressed to the Postal Regulatory Commission. *See LeMay v. United States Postal Serv.*, 450 F.3d 797, 801 (8th Cir. 2006) (holding that the Postal Regulatory Commission has exclusive jurisdiction over customer complaints of unsatisfactory service); *Shelby Res., Inc. v. United States Postal Serv.*, 619 F. Supp. 1546, 1548-49 (S.D.N.Y. 1985) (holding that a hearing by the Commission and potential review in a United States Court of Appeals is "the sole remedy for a user of postal services who is not receiving adequate service"). For each of the reasons set forth above, the USPS Defendants' motion for summary judgment is GRANTED with respect to Mr. Nolen's allegations of negligent postal delivery.

### F. South Barre Post Office Handicapped Parking Space Claim.

The USPS Defendants have submitted an affidavit from David Montgomery, Postmaster of the South Barre Post Office, to provide facts regarding Mr. Nolen's parking spot claim. Mr. Montgomery has been with the USPS since 1980, and has known Mr. Nolen as a customer since February 2007. He states in his affidavit that Mr. Nolen parked in the South Barre Post Office's original handicapped parking spot in mid to late-February 2009, while Mr. Nolen's wife went in to get the mail. As Mr. Nolen's

wife did not appear to be disabled, Mr. Montgomery told the Nolens that they should not park in the handicapped space.

Shortly after this event, ice fell off the post office roof into the handicapped space, and it appeared that more ice was likely to fall. Accordingly, the landlord for the post office building moved the handicapped parking spot to a different location. The new location was also closer to the base of the handicapped access ramp, and according to Mr. Montgomery "was only four spaces away from the old location at the opposite end of the parking lot." (Doc. 39-7 at 2.) Mr. Montgomery asserts that the space was moved "entirely for safety reasons," and explains that "[i]in a major revision of the parking lot at the S. Barre Post Office the handicapped spot has been set permanently in a new location at the beginning of the handicapped ramp, only two spaces from its original location, as of Spring 2011." (Doc. 39-7 at 2.)

On or about March 17, 2009, Mr. Nolen sent Mr. Montgomery a letter explaining that both he and his wife were handicapped, and that they were therefore allowed to park in the handicapped space. He now complains that moving the handicapped space forced he and his wife "as well as other similarly situated disabled people" to "walk the width of at least four cars more than previously required." (Doc. 4 at 8.) As noted above, Mr. Nolen has been contacting postal officials and congressional representatives, "but no action has been taken to move this space back to where it was." *Id.*

Although not specifically set forth in the Verified Complaint, the court assumes that Mr. Nolen intends to bring a disability discrimination claim based upon the parking space issue. A disability claim against a federal agency or its employees is brought pursuant to the Rehabilitation Act, which generally applies the same standards as are applied to claims brought under the ADA. *See* 42 U.S.C. § 12111 *et seq.*; 29 U.S.C. § 784(d); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (stating that "[a]lthough there are subtle differences between [the ADA and the Rehabilitation Act] the standards adopted . . . by [them] are generally the same[.]") (citation omitted). "To establish a *prima facie* case under the Rehabilitation Act, a plaintiff must allege: [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has been

13

denied benefits of or excluded from participating in a federally funded program or special service, [3] solely because of his or her disability." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 216 (2d Cir. 2012).

Here, the USPS Defendants do not directly dispute Mr. Nolen's claim that he is disabled. (Doc. 39 at 24) (accepting "for the sake of argument" Mr. Nolen's disability claim). Their argument instead focuses upon the statements in the Montgomery affidavit regarding the reason for moving the parking space. Those statements, which are undisputed, establish that the parking space was moved because of falling ice and snow, and not because of any discriminatory animus. Furthermore, the spot is now closer to the entrance to the handicapped access ramp. There is no allegation in the Verified Complaint, or elsewhere in the record, to suggest that Mr. Nolen is currently being deprived of the ability to park in the handicapped space at the South Barre Post Office. In light of these undisputed facts, the court finds that Mr. Nolen's claims are moot, and the USPS Defendants' motion for summary judgment is GRANTED.

### G. Home Delivery Claim.

Similarly, Mr. Nolen has failed to establish a viable claim with respect to the USPS Defendants' refusal to deliver to a mailbox attached to his home. The affidavit of Mathew Rodeck, formerly the Postmaster at the Barre Post Office, attests that none of the houses on Gallow Avenue have attached mailboxes "[b]ecause of the steep grades along Gallow Avenue and the safety concerns associated with steep grades." *Id.* Although Mr. Nolen states in his Verified Complaint that an attached mailbox "would be in an approved postal mail box similar style, size, etc. of mailboxes through the very same carrier route as plaintiff's," he does not contest the safety concern raised by Mr. Rodeck. Accordingly, the court finds there is an undisputed safety issue, and thus a non-discriminatory reason for refusing delivery to an attached mailbox. The USPS Defendants' motion on this claim is therefore GRANTED.

### IV. City of Barre Defendants' Motion for Judgment on the Pleadings.

Also before the court is the City of Barre Defendants' unopposed motion for judgment on the pleadings. The motion notes that of the eighty paragraphs set forth in

14

the Verified Complaint, only two of those paragraphs make reference to the City Defendants. The first, in paragraph fifty-seven, states that two Barre police officers delivered a notice of trespass barring Mr. Nolen from the Barre Post Office. The second, in paragraph sixty-two, alleges that by delivering the notice of trespass, "Defendants including police personnel" violated Mr. Nolen's First Amendment right to assembly, right of free speech, and right to be free from retaliation for exercising his constitutional rights. (Doc. 4 at 7.) The City of Barre Defendants further note that "[t]he No Trespass Order was issued at the request of the United States Postal Service. The only involvement of the City of Barre and its Police Department is related solely to the delivery of the message." The motion argues that such delivery does not form the basis for any sort of liability.

The standard for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is essentially the same as the standard that courts apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009). A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (citation omitted).

As discussed above, a notice against trespass is a necessary predicate for a charge of unlawful trespass. *See* 13 V.S.A. § 3705(a). The City of Barre Defendants argue that they cannot be held liable for merely being "the proverbial messenger" of such a notice. (Doc. 42 at 3.) Indeed, the Vermont Supreme Court has held, albeit in an unpublished opinion, that "[p]roviding written notice [under § 3705(a)] to a person that the person is not permitted to enter a particular piece of property is not an actionable wrong for which damages may be sought." *Morse v. Sprague*, 2004 WL 5583289, at *1 (Vt. Jan. Term 2004) (unpublished). Nor can there be an action for injunctive relief, as in this case the

15

notice of trespass has been rescinded, and is thus not being enforced. Mr. Nolen's claims for injunctive relief are therefore moot, and the City of Barre Defendants' motion for judgment on the pleadings is GRANTED.

## V. Mr. Nolen's Motion for a Temporary and Permanent Injunction.

Finally, Mr. Nolen has moved the court to grant partial summary judgment and injunctive relief in the form of an order requiring delivery to a mailbox affixed to his home. As the court has now ruled in favor of the USPS Defendants on that issue, the motion is DENIED.

## CONCLUSION

For the reasons stated above, the USPS Defendants' motion for summary judgment (Doc. 39) and the City of Barre Defendants' motion for judgment on the pleadings (Doc. 42) are GRANTED. Mr. Nolen's motion for extension of the stay, to compel an answer, and for partial summary judgment (Doc. 30) is DENIED. This case is DISMISSED.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 22nd day of February, 2013.

*/s/ Christina Reiss*

Christina Reiss, Chief Judge
United States District Court